We're ready to hear argument in our third case, number 13-18-20, Davis v. City of Greensboro. Good morning, your honors. My name is Ken Kier. I'm an attorney from Greensboro, North Carolina, and I represent the City of Greensboro, North Carolina in this appeal. I attempted in the initial brief and reply brief to address all the matters and issues that I thought that this court should be aware of, and so what I'd like to do on this oral argument is cut directly to the chase on several of the interesting issues that we have, and I'm actually going to change up my plans as to what I'm going to argue initially based upon what you all did and said in the first argument today, and that was that a four-circuit panel cannot overrule a prior decision of a different panel, and that actually is exactly the law in the North Carolina court of appeals. That's an interesting principle, isn't it? Embrace that. We can't even overrule a prior opinion of the same panel. Well, of course, unfortunately, in North Carolina, there's no en banc for a court of appeals. The only recourse is to go to the Supreme Court. There's no certification either. Correct, correct. You don't have a court of appeals, your honor. I never have figured out how much authority they have as opposed to the Supreme Court, too. You've got a lot of issues involved in that. We're getting away from your case. You only have 20 minutes. Okay, well, it's not going to take me 20 minutes, I don't think. But again, North Carolina court of appeals, a subsequent panel cannot overrule an earlier panel, and this court is faced with, do you follow the decision that the plaintiffs want you to follow, and that is the Myers case, or do you follow the earlier decision, the Watauga County case, that the city wants you to follow. And specifically, both those cases dealt with the applicability of NCGS, North Carolina General Statute 159-28, and that is when the city, a city is sued in North Carolina for breaching a contract, that statute indicates there must be a pre-certification or a pre-audit certification or certificate for there to be a valid contract. And Watauga held that even though the contract was to be executed in future years, the statute applied. However, the Myers panel, some years later, held that no, that statute only applies if the contract is to be executed that very same year that the contract was executed. How did you get this case up here? Got this up here because we, we had 26... You're up here on a collateral order, doc. That is correct. And what did the judge, you invoked a sovereign immunity claim. Governmental immunity. Governmental immunity claim, and how did the judge rule on your governmental immunity claim? Obviously denied it, and... Well, she says here on her opinion, she says that community defense is therefore inappropriate for resolution at this stage, on page four of her main opinion. That is correct. So how did she, she says it's inappropriate for resolution. But it's up here because she, because she failed to follow the law, which is in our brief, that as a matter of law, that the plaintiff had failed to plead that the city had a pre-audit certificate. No, but how did she rule on your immunity defense if she says it's inappropriate to rule on your immunity defense? I'm, I'm, well, the best way I can answer that is... I read you the language. She denied... The language of her order. Right. Of her opinion. Well, because this court has to decide the issue de novo. Well, but the collateral order doctrine, one of the first elements of it is that the immunity claim that was invoked has been conclusively resolved against the claimant of the immunity, and that's the city of Greensboro. So did she conclusively resolve it when she said she wasn't going to resolve it? Well, she resolved it in the sense that she did not follow North Carolina law... So she impliedly resolved it. Absolutely. In face of the proposition that she said, I'm not going to resolve it, you're saying she still resolved it. Exactly. But you don't explain that. I mean, I just want... Well, actually... We jealously guard this jurisdictional stuff. I understand. Particularly on these interlocutory appeals, because we get enough appeals from final orders. We don't have to get into these interlocutory things if we don't, if we don't need to. We don't want to. We want a final order because we don't like piecemeal appeals. But that's, in this interlocutory collateral order doctrine, is an exception. But you've got a case here where the judge says, I ain't going to resolve the immunity defense. I'm not going to resolve the immunity defense. I'm talking to you much like I'm from West Virginia. And then you say, well, she resolved it anyway, in the face of that, because she ultimately said everything else is denied. That's what she said in her order. Correct. And actually... So you're saying that's what it is that gives you the right to come up here. You said, we've got immunity. She didn't explain anything about why she was denying immunity, but she resolved it enough that you can take the appeal. Absolutely. And maybe you're right, but the judge says it's inappropriate for resolution. So she didn't conclusively resolve it, I don't think, if she said it was inappropriate for resolution. Well, from the city's standpoint, she did resolve it. We feel we have an absolute right on governmental immunity not to be sued for the breach of contract claim. I understand you're claiming it, but the judge says it's inappropriate for resolution. Your judge down there said it was inappropriate for resolution. But by her denying our motion... But now you want us to resolve it when she says she didn't. But by the judge doing what she did, she did effectively deny our right to be free from suit, which is the whole concept of the very concept of governmental immunity. And I address that, by the way... It's a lot easier for us to review a decision where a judge has analyzed, particularly where it implicates some state law, where the judge has analyzed some state law principles with respect to governmental immunity in North Carolina. It would help us a lot if we had a 20-page opinion analyzing governmental immunity in North Carolina rather than an opinion that says the immunity defense is inappropriate for resolution, and then an order that says, I'll grant a couple things here, but I'm going to deny everything else. We would have preferred that to... And then you come up here on an issue that hadn't been explained to us. But the fact that the judge denied our motion... And then both sides are kind of sweeping under the rug. You say there's immunity. There's immunity, so we have a right to appeal, and they say, well, we don't think we have a right to appeal, but nobody analyzes why we do or don't. Actually, in the Davis case, in the brief, initial brief, footnote 3 on page 17, I actually addressed the issue because I was concerned, well, maybe the plaintiffs are going to argue, well, hold it. It's a jury issue, and there's a factual dispute. And in essence, that's what the court was saying is, gosh, this 159-28 seems to be so fact-specific. Maybe we should develop some more facts. Well, the court in the state of Carter v. City of Detroit, Sixth Circuit case, was talking about if as a matter of law that the court should have acknowledged and accepted the governmental immunity defense, then even though the lower court went off on a tangent and said, well, there's a dispute of fact, an appellate court can still, under its de novo right, hold that there is a governmental immunity based upon the plaintiff's failure to properly plead a complaint. So I think, again... Sorry, what did you quote from? Oh, yeah, that's page... Yeah, I've got it. Okay, footnote 3. Why shouldn't we just treat... I understand the district court's order uses the word deny. But as Judge King was suggesting to you, did the district court actually just defer consideration? It did not. What the court could have done is say... Wait, wait, where's the evidence that it was denied other than the use of the word deny? I think that's pretty strong evidence that she denied it by using the word deny in her order. And if I disagree with that interpretation and I interpret her deferral of the motion on governmental immunity, do you have a fallback argument? Well, the fallback argument, I respectfully disagree that the judge, if she really wanted to defer it, she would not have denied it. I understand you disagree and that I shouldn't do that. But if I did that, do you have a fallback argument? Well, the fallback is that the judge could have not denied it. And simply there's no requirement the judge actually rule and decide the Rule 12b-6 motion. She could have actually said, you know what, I'm not even going to rule on this right now. I want to, in essence, hold an advance. I'm going to let you do some more. But that's what it sounds like when she says the immunity defense is therefore inappropriate for resolution at this stage. That sounds like she's not going to rule on it now. But again... But maybe later at this stage. But then she comes over and enters an order. If this is the right order, it says as to all other causes of action, the motion is denied. Denied, exactly. And again, the key... No question about that. That's what we got. I mean, that's what we got here. And you say that gives us an obligation to hear your interlocutory appeal on a claim of sovereign immunity or governmental immunity under North Carolina law. She says she was having some problems deciding it because of a factual issue, that she wanted the facts to be developed some more. That is no different than if a court... And that's another reason, if the fact relates to the immunity claim, we shouldn't hear it now. We ought to let the facts be determined and let it come up here on the facts. The reason why I'm here today is that, respectfully with the judge, is she was just wrong. That there did not need to be a development of facts. This court can look at the complaint and nothing else. And that's what you should do. But if we don't have a conclusive determination of the immunity claim, we don't have jurisdiction to decide anything else. We stop there and the resolution of this appeal is appeal dismissed. I'd agree if she's not denied the motion. If there's no order to deny the motion, I can't appeal that. There's fourth circuit precedent that helps you. I don't know why you would agree to that. The fact I thought it was so... I think she's got something that's going to help you. The fact I thought... Nobody found it except Judge Bonitz. That it was so granted that the fact she denied it, I could actually bring this up to the court of appeals. That's why I didn't even make a big issue of it. In fact, relegated the issue about factual dispute in a footnote. And the fact that the defense counsel... I mean, the plaintiff's counsel and their response brief also did not address that specific issue. Again, that's why I did not address it. But I do think that... Well, you do understand that you all can't decide whether we have jurisdiction or not. Absolutely. But I think the case law... I cited and now I hear the judge referring to some fourth circuit cases. I feel confident this court does have jurisdiction. Again, if she had not denied it, she had not entered the denial, I would not be here on this issue whatsoever. But I thought it was very clear that she did deny... I mean, what she was saying, frankly, is city of Greensboro, as a matter of law, this complaint is satisfactory enough to get past 12b-6. And what we're saying is, no, your honor, and we're coming to this court for correction, that on the face of the complaint, which you have to look at at 12b-6, the governmental immunity stands. The plaintiff has failed to allege sufficiently a contract that would basically have no governmental immunity. So I do think that this court does have jurisdiction to hear this appeal. Yeah. And if we were to agree with you, what would be left of... Everything. Yeah. Right. Equal protections out of the case, right? And what else would be left? Everything? Right. So you're just here on the three breach of contract. That is it. Which counts are they? They actually differ from case to case. Okay. I'm sorry, we can figure that out. Yeah. That is somewhat confusing because, as your honors have probably looked at the four different complaints, they're pretty much the same thing, but they have different paragraph numbers, et cetera. In fact, if you had the unfortunate exercise of having to read each one of these four briefs, they all basically said the same thing. You're up here on three counts in each complaint. Yeah, basically. And you admit that the rest of them don't have anything to do with this. No, we didn't appeal it. I mean, that's down in the middle district. Sorry, because I did not think that we had a right to appeal anything that was not related to government immunity. That would be pure interlocutory. So that's down there. We are just on those issues that I appealed on those calls of action with respect to – Was that mainly just to slow the case down? Not at all. The case has not slowed down, believe me. We've had – this is outside the record. So the discovery is continuing. The discovery is continuing. Deposition is taken, et cetera. That has not slowed the case down whatsoever. We won't hear from you in rebuttal unless you want to use your rebuttal time right now. Oh, no. I do want to talk a little bit about the dispute between the Watauga and Myers, but I can do that with rebuttal. Okay, thank you. Thank you. May it please the Court, my name is Torin Fury, and I represent the plaintiff, Appleese, in the four various suits. I'm going to primarily focus on the Davis case because I think that is the one that was the main opinion that all of the other opinions basically followed. Why were different complaints filed? I mean, when you get this file, it's just kind of crazy. Well, I wasn't involved in that initial decision, but I will say I think part of it was you were dealing with different departments, meaning some are police officers, some are firefighters. We were dealing with different entities at that particular time, and I think we had different times as to when they came and signed up as far as being willing to proceed. You had limitations questions if you didn't go for it? I mean, I would just sort of think you'd wait until you got everybody. Well, anyway. Obviously, yes. We might have, and it was mentioned in the brief, that was one of the reasons why we mentioned the delay was the fact that, obviously, there would be a potential statute of limitations for some folks if they didn't file in a particular time. So that's just logistically the way we had to do it. With regard to Judge King's questions, obviously that was raised in our brief, but I'm not aware of any Fourth Circuit cases that were cited. Obviously, if the court doesn't have jurisdiction because it's not appealable, then at this point there is no basis for this court to proceed with this opinion. Now, with regard to answering your question regarding Judge Eagles' opinion, it clearly left open for a later time as to whether she could decide that sovereign immunity could apply at the summary judgment stage once the facts were further developed through discovery. So in that sense, there hasn't been a final decision on that particular issue. Does that make a difference? And to be honest with you, I don't know the answer to that. Okay. To better answer the question of what's left, Judge Davis, in this particular case, according to the briefs, basically you're dealing with the contract issues for the longevity pay. That's what's left for this court's decision. There are other claims that will still remain open regardless of this court's ruling that will proceed. Does this mean you regard the contract claims as being the heart of the case? No. Because it was just hard to understand exactly why we were having an interlocutory appeal on what seemed to be three of many. Well, there's multiple issues. That's my point. I thought maybe you were saying these contract issues are the ones that are driving the bug. No, I'm sorry. They're the ones that we're dealing with on this appeal. That's what the appeal is dealing with, the longevity issues, and whether the breach of contract claims can proceed against the city of Greensboro. And the two basic issues there, once you get past the jurisdictional issue, is the 159-28A issue, which is the pre-audit certificate. For a couple of reasons, the plaintiffs would submit that the claim can proceed. One is the Myers case, which the Myers case specifically held in interpreting the specific provision of 159-28A, which says where the contract obligation cannot be completed within the same year, that it's an exception. And specifically in the Myers case, the court said that because the severance provision or obligation did not occur in the same year, the pre-audit certificate requirement did not apply. They say that this earlier case, Watauga County, was contrary to that. Well, I think that the difference is the distinguishing factor. The Watauga County case doesn't deal with that particular exception in the statute at all. It's not even discussed. And I think one important thing to note about the Myers case is the fact that it was decided 15 years ago. The legislature has not stepped in and amended that exception to the statute, and it makes some sense. Because in this particular instance, there's no dispute. The longevity payments were not going to occur in the same year that the person was hired under the employment contract that we're alleging. And the rationale for that is that another legislative session could appropriate the money? Is that it? Well, it's not the legislative. Basically, each local government. Oh, each local jurisdiction, they could appropriate new money in the next year? Is that it? Exactly. You could do a new budget each year. And not only that, Judge Motz, I think the other thing that's important is obviously with the longevity pay, there's a lot of contingencies that are going to occur as a result of that, meaning that you may hire 100 employees in the first year, but you may have 10 that are still there five years later. Yeah, but the exception doesn't go to your particular fact situation. The exception goes to not that doesn't have to be within one year, right? Well, correct. But I think in that instance, it encompasses more than our fact situation, but certainly it does encompass our fact situation. Because the first longevity payment would have occurred five years. I see what you're saying. Okay. And I think what my point is is that if you get hired in year one, you may not have 20 people that are still in the police department or the fire department or other city entity that would still exist, so you're not going to budget all of those in five years from now. And that's the reason, in my opinion, for the exception. And also the RSB case, again, cites this particular opinion with authority for the same proposition and would contend to this court that the Myers case, and you're bound by the Myers case, it's North Carolina law, and that's what exists and that's what we have. The other issue with regard to 159-28A, which is dealt with in a footnote in one of the briefs, there's a specific provision dealing with payroll accounts, where if it's in an impressed account where, in that particular instance, it's paid as a payroll account, then in that instance you don't have to have the separate pre-audit certificate for the individual contract in this particular instance. And I think that's one of the things that bothered Judge... I was not at the argument, but I obviously was reported back to me. One of the things that sort of concerned Judge Eagles with the city's position is that you could hire an employee on day one, and then on day 31 just say, okay, you don't have a pre-audit certificate, so therefore we're going to change your rate of pay because at that point we're not going to pay you $15 an hour because it wasn't a pre-audit certificate, we're going to pay you minimum wage instead. And she had a concern with that being the city's position in this particular circumstance. And ultimately, you know, one thing that I think is somewhat key with regard to the prior cases dealing with 159-28A, in addition to the more than one year obligation, is the fact that in all of those cases pretty much there was some other evidence that the certificate didn't exist. Either there was an affidavit from the city, there was where the party withdrew the claim of breach of contract, where the Howard case specifically where they admitted that the person that went to the mediation didn't have the authority to enter into the agreement. You had the ABC board case where specifically the contract in and of itself was ultra-virus. It wasn't something that the city or county could do and therefore the contract never would have been valid to begin with regardless of any other requirements. And in this instance it's interesting that unlike at least one of the other cases, there was no affidavit filed by the city to indicate that the pre-audit certificate didn't exist. And that's one of the reasons why I think, again, the court wanted to develop some facts to be able to determine everything from a contract that was, by our allegation, 20 years ago, which you have to accept as true. At least for Officer Smezdek and I don't remember all the other higher dates for the other ones. And so for that reason 159-28A just doesn't apply. And I think the Myers case is by far the easiest way to decide that. The other area in the brief that I want to address briefly, it wasn't addressed in great length in either one of these particular briefs, was the allegation that because the word written contract wasn't in the allegation of the complaint that that's enough for this court to reverse Judge Eagles. And one, I think, goes back to your point, Judge King, which is in this instance certainly that hasn't been decided other than the fact that we have alleged there's a valid contract, which plaintiffs would argue means that you've met all of the requirements of a contract, meaning that it's in writing if it's required to be, that it's got adequate consideration, that it was formed by somebody that was bound by it. And if you take the argument of the city sort of one step further, then arguably you have to allege in the complaint that the particular contract was signed by somebody that was authorized to bind the city as a specific allegation in the complaint. And it's our contention in this particular instance that we have alleged enough to get past 12B6 to do additional discovery on. In addition, briefly, to mention the 4.111, clearly the whole city charter wasn't included in that particular attachment, and also the fact that we allege that there was an employee handbook that was in writing that at that point the city would be bound by, at least if we have a valid contract with vested benefits, that was in writing alleging the longevity payments. And again, I think if you look at the entire city charter, there are specific provisions dealing with employee salaries. And again, I think if you take the city's position of the burden that it would put on the cities as far as having a written contract for every single employee that they've ever hired, since they've worked for that, it is going to be something that in that instance is going to be potentially an awful lot to require of the cities in those particular instances. But given that it was fairly finite issues, I think that's generally what I've sort of wanted to point out. I think the briefs cover most of what I've said. If there are any additional questions, I'm more than happy to answer them to the best that I can. I think we understand your position. Thank you very much.  This would be improper to ask for some extra time from you. He did not use, but I know that's not the way it is. Maybe he'll give you less. I have five minutes to talk about six cases. First, Howard case, that case I think completely disputes what he has just said. That was where the complaint actually alleged a contract and the court of appeals said not good enough, 12B6 granted because the complaint did not expressly state that there was a pre-audit certificate. Howard, with respect to whether a pre-audit certificate applies to contracts that are to be executed beyond just the year that it's signed. What case are you talking about? I'm sorry, which one is that? The first one? What case you just talked about. You only talked about one so far. The Howard case. I believe that that was page 14 of my brief in Davis. In fact, it just came out May 7, 2013, shortly before the hearing before Judge Eagles. That's the court of appeals case. North Carolina Court of Appeals clearly says plaintiff alleged in the complaint there was a contract still dismissed 12B6 because of failure to say affirmatively that there was a pre-audit certificate. Yeah, but we have the Myers case talking about this exception to the rule. Is there any case that also talks about the exception to the rule and says for some reason it doesn't apply? First of all, the statute doesn't. It doesn't have an exception. This is a court-made exception. In fact, the Myers case stated at page 74... R-N-B-A is the statute. Maybe it's not. It is, but it says provides that statute. This is quoting the Myers case. Provides no guidance as to whether a pre-audit certificate is required for obligations that will come due in future years. They're saying the statute doesn't say it. So the court of appeals in that panel came up with this exception. The problem, though, is that... What was it? Seven years before, another panel in the Watauga County case directly was faced with a contract that was to be executed in the future. But they talked about the act being outside the powers of the town council. That was the basis for the decision there. Well, that was one of the bases of the decision there. But the other basis was in subpart or part 2 where it talked about 159-28. Now, if you say that that's a dicta, then definitely the Watauga County case that was decided seven years earlier definitely is a precedent that this court should apply. In Watauga, they had a contract with two cities that would be executed in the future. In fact, it actually was executed for at least three years. And so when the plaintiff sued for a breach of that contract that was to be executed in the future, the court said, no, 159-28 requires a pre-order certificate. There is none there. There's none alleged there. Therefore, case dismissed. The court did not expressly, in the words that the Myers case did, talk about whether the statute only applies to executable contracts in one year or not. But the fact is, the Court of Appeals in Watauga had the same statute, looked at the same wording, and decided that even though the contract was to be executed in future years, you still need that pre-order certificate. And frankly, what was it, four years later in the L&S Leasing Incorporated case, same thing. Obligation was to be executed the following year, not in the same year. And yet, the court said, 159-28 applies. What do you say about the Town of Mount Pleasant case? Excuse me? Town of Mount Pleasant, which followed Myers, seemingly. Well, I think in that case, you're talking about the one that decided Myers. Yes. This is a problem we have in North Carolina. Yeah, but now it's a problem for this court. If the North Carolina courts are all over the place. Why shouldn't we defer to the state court to work it out? Exactly. Well, because I think under the precedent in North Carolina, where a subsequent panel cannot overrule another, it is an easy task for you to simply follow Watauga County, which is directly on point. It's the first one to decide. In fact, later in 2001, Data General followed that same principle. What does it mean under North Carolina law, discretionary review improvidently granted? According to the appellate courts, first of all, you're not to read anything into that at all. Of course. And I get that. But in reality, I'll just tell you what the reality is. But I've heard other judges and justices have told me they've decided, you know what, the time's not right to make this decision. We're going to wait until another case. So it's like cert, cert, dismiss. Correct. It does not create any precedent at all. Somebody wants to do a rebuttal there. Your brother over here apparently takes a different view. No, no. Well, and I think to answer one of your questions, the only two times that you have, basically, the automatic right to appeal when there's a dissent. But in civil, is when there's a dissent or if there's a substantial constitutional claim. Other than that, it's not uncommon in courts where people take a look at it and decide we shouldn't have taken it. Their denial doesn't change anything than the original conclusion spoke out. Right. So Myers is out there. And the Court of Appeals is citing Myers, even as late as 2012. The Supreme Court of North Carolina looks at it, says we don't want to get into this. And I understand that's not precedential. It's not binding on us in any way, shape, or form. But you know what? If they won't fix it, I don't know how we can. Well, I think, your honors, as every federal court does, you have to predict what the North Carolina Supreme Court is going to do. And what you have now is you have the Watauga case and their line of cases, Watauga, LNS, and Data General. On the city side, the one we want you to follow, and you have the Myers and the 2012 case on the plaintiff's side. And I think your honors can try to predict what the North Carolina Supreme Court is going to do. Why would you do it? To be able to decide this case. The North Carolina Supreme Court has had at least two, as I read the record, at least two opportunities to get rid of Myers. And they took a close enough look at it to know what was going on. And they decided not to. I read it the other way. They had a chance to get rid of Watauga and Data General and LNS. And they decided not to. Now, I can't explain why our Supreme Court does not want to yet address this. I can assure you, though, this issue will be back up here if your motion. We don't decide state law. By that time, North Carolina law will be clear on it. Right. We would only decide state law issues if we absolutely had to, wouldn't we? I mean, particularly, we don't even have a certification procedure, would we? That is true. But what I'm saying is, if your honors decide, we're going to punt on this one, and it goes back down. Do we give any deference to the North Carolina judges? I mean, they practice law down there, and they've been dealing with it. None of us are even from down there. Well, I'm not sure how you'll decide which panel gets what cases. There is, in fact, circuit law that says we do give deference on the question of state law. Well, again, the dilemma you have, and I don't envy you, is you've got two very distinct, divergent, you can't harmonize them together. But the thing you do have is an earlier case. The Watauga County case, that's never going to change. Never. Myers will always be later. Thank you, Your Honor. Thank you. We will come down and greet the lawyers, and then go directly to our last panel.
judges: Diana Gribbon Motz, Robert B. King, Andre M. Davis